IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GERALD RODEWALD

                Plaintiff,

and

WASTE MANAGEMENT OF WISCONSIN, INC.

                Involuntary plaintiff,

      v.

WISCONSIN CENTRAL, LTD.

                Defendant.

OPINION and ORDER

20-cv-843-jdp

---

Plaintiff Gerald Rodewald was severely injured when the garbage truck he was driving was struck by a locomotive owned by defendant Wisconsin Central, Ltd. Rodewald contends that Wisconsin Central caused the collision by acting negligently in multiple ways. The court dismissed some of Rodewald's negligence claims at summary judgment, and he is proceeding to trial on his two remaining claims: (1) Wisconsin Central was negligent for failing to cut vegetation in its right-of-way; and (2) and for operating the locomotive in excess of 20 miles per hour without auxiliary lights. Trial is scheduled for March 28, 2022. The court will hold a final pretrial conference on March 17, at 4:00 p.m. So that the final pretrial conference may proceed efficiently, this order addresses the parties' motions in limine.

ANALYSIS

**A.  Wisconsin Central's motions in limine**

**Motion to preclude evidence of Wisconsin Central's size and financial condition, Dkt. 106**

This motion will be granted in part and denied in part. Rodewald is precluded from discussing Wisconsin Central's financial condition. He will be also precluded from comparing Wisconsin Central's size or power to his own. But Wisconsin Central's status as a major railroad operator is relevant to Wisconsin Central's knowledge of crossing safety, vegetation control, and locomotive operations. So Rodewald can introduce evidence about Wisconsin Central's size and status as that information relates to the decisions it made with regard to Cranberry Lake Road crossing.

**Motion to preclude parties and witnesses from referring to Canadian National or Canadian National Railway, Dkt. 107**

Wisconsin Central says that it is a direct subsidiary of Canadian National, but that any reference to Canadian National would be confusing to the jury because Canadian National is not a party to this case. This motion will be denied. Wisconsin Central has not identified any risk of prejudice from the jury hearing about its association with Canadian National. The locomotive involved in the accident was a CN 2194 locomotive, which means Canadian National 2194, and many of the parties' documents refer to CN or Canadian National in discussing various aspects of the crash. The court will not prohibit the parties or witnesses, including expert witnesses, from using the term Canadian National.

**Motion to preclude testimony or evidence that are legal conclusions, Dkt. 108**

The court agrees with the general principle that witnesses may not give legal opinions, *U.S. v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008), and the court will not permit witnesses to

testify about the meaning of a law or how the jury should answer a particular verdict question. But under Federal Rule of Evidence 704, experts and other witnesses may give testimony that goes to an ultimate issue to be resolved in the case. Because Wisconsin Central does not identify any specific legal conclusions that should be precluded, the court cannot determine whether it seeks to preclude proper or improper opinions. So the motion will be denied as vague and overbroad. Wisconsin Central may object at trial to testimony that it thinks should be excluded as improper legal conclusion.

**Motion to preclude references to the railroad industry as inherently dangerous, Dkt. 109**

Rodewald does not oppose this motion, so it will be granted, with the caveat that the court will not preclude evidence or argument regarding whether specific practices or conditions relevant to the collision in this case were dangerous.

**Motion to preclude evidence regarding Rodewald's loss of fringe benefits, Dkt. 110**

Wisconsin Central argues that Rodewald's vocational and economic experts should be precluded from offering opinions on his alleged loss of fringe benefits because their opinions are unsupported, speculative, and unreliable.

Rodewald's evidence on fringe benefits is problematic. His vocational rehabilitation expert Richard Armstrong opined that Rodewald's lost fringe benefits could be calculated by taking 15% of Rodewald's average weekly wage. Dkt. 110-2 at 7. But Armstrong doesn't explain in his report why 15% is an appropriate figure, or even why he is qualified to determine the appropriate figure and calculate lost fringe benefits. (His training and expertise lie in conducting vocational assessments, consulting, and placement.)

Rodewald's economic experts, Karl Egge and Felix Friedt, also fail to provide an adequate explanation in their report for their calculations regarding Rodewald's loss of fringe benefits. Egge and Friedt provide three potential methods for calculating Rodewald's fringe benefits. Dkt. 110-3. First, they calculate benefits relying on Armstrong's 15% figure, but they fail to explain why they accepted that figure. Second, they calculate benefits based on information that obtained from Rodewald's former employer's website, which states that the value of benefits for the average Waste Management employee is $23,756, and encompasses numerous types of benefits. But Egge and Friedt do not explain how they decided that the $23,756 figure could be reliably applied to Rodewald. The court's own review Waste Management's website shows that the $23,756 figure is expressly noted to be "hypothetical and presented for illustrative purposes only," and that "individual circumstances may vary, and [Waste Management] benefits offerings are subject to change and may vary by site." *See* https://wmtalent.referrals.selectminds.com/default2279/moreinfo/Benefits-perks (last visited Mar. 10, 2022). The third alternative calculation offered by Egge and Friedt is based on data provided by the Bureau of Labor Statistics, again, without any explanation why they relied on that data instead of Rodewald's W-2s, pay stubs, and documents from Waste Management, to determine the value of Rodewald's fringe benefits.

Rodewald responds that proving the value of loss of earnings and fringe benefits is necessarily uncertain and speculative. But the problem here is not that Rodewald's calculations are uncertain or speculative—the problem is that the calculations do not appear to be based on reliable methodology.  Rodewald says that Armstrong, Egge, and Friedt will testify that the numbers and data that they used are the type generally used by experts calculating fringe benefits. This might be true with respect to the data from the Bureau of Labor Statistics, but

it seems doubtful that economists would rely on an unexplained percentage (Armstrong's 15%) or an unverified recruitment website (the $23,756) to perform lost-benefits calculations.

Before making a ruling on this motion, the court will give the parties the opportunity to make further argument at the final pretrial conference. Rodewald should be prepared to explain why his experts' analyses of lost fringe benefits satisfy the requirements of Federal Rule of Civil Procedure 702.

**Motion to preclude the use of newspaper articles, social media, and other news stories, Dkt. 111**

This motion will be granted as unopposed.

**Motion to preclude the use of evidence regarding discipline of the train crew, Dkt. 112**

This motion will be granted as unopposed.

**Motion to preclude use of evidence of other crossing accidents involving Wisconsin Central or the train crew of CN 2194, Dkt. 113**

Rodewald wants to introduce evidence of other accidents involving Wisconsin Central trains and the CN 2194 crew. He argues that the other accidents show that motorists don't always hear the locomotive's horn and bells. Wisconsin Central argues that the evidence of other crossing accidents should be excluded because they would be unfairly prejudicial to Wisconsin Central and would cause confusion.

The motion will be granted. Rodewald has not shown that the other accidents were substantially similar to the collision in this case. None of the accidents occurred at Cranberry Lake Road crossing and none involved a garbage truck. Rodewald has not shown that the other accidents involved an allegation that the locomotive auxiliary lights were off or that the crossing was obscured by vegetation. So evidence of other accidents would not be probative of the issues to be resolved in this case, would create confusion at trial, likely would lead to a series of mini-

trials about who was responsible for previous accidents, and would unfairly prejudice Wisconsin Central.

## Motion to preclude use of post-collision photographs for purpose of asserting that auxiliary lights were out pre-collision, Dkt. 114

Approximately one hour after the collision, a state trooper took photographs of the CN 2194 locomotive showing that the auxiliary lights were off. Wisconsin Central asks the court or preclude Rodewald from relying on those photographs to argue that the auxiliary lights were off at the time of collision. It argues that the post-incident photographs are not probative of whether the lights were on at the time of collision because light bulbs are delicate and they likely had been damaged or disabled during the collision.

This motion will be denied. Wisconsin Central argues that it is "common sense" that light bulbs are delicate and would be damaged after being hit by a garbage truck, but the strength and durability of a locomotive's auxiliary lights is not common sense. And Wisconsin Central has submitted no evidence that locomotive auxiliary lights are likely to be disabled during a collision. As the court explained at summary judgment, there is a genuine factual dispute about whether the auxiliary lights were on at the time of the collision, and the post-collision photographs are one piece of evidence from which a jury could infer that the auxiliary lights were not illuminated at the time of the collision.

## Motion to bar evidence that Wisconsin Central removed vegetation from its right-of-way after the collision, Dkt. 115

After Rodewald's accident, Wisconsin Central cut back brush on both sides of the Cranberry Lake Road crossing. It asks the court to exclude evidence of the vegetation removal under Federal Rule of Evidence 407, which applies to subsequent remedial measures. Rodewald concedes that the evidence is not admissible to prove negligence, but he argues that it is

admissible for four reasons. First, he says it should be admitted to show that Wisconsin Central controlled the crossing and second, to show that Wisconsin Central could have removed the vegetation before the collision. But those points are not in dispute, so there is no need to introduce evidence of the vegetation removal to prove control of the area or feasibility of vegetation removal.

Third, Rodewald argues that that the evidence may be admitted to impeach Wisconsin Central witnesses. Federal Rule of Evidence 407 does permit evidence of subsequent remedial measures for impeachment purposes, but Rodewald's example of how he intends to use the evidence would not be proper impeachment. He says that if Wisconsin Central's witnesses testify that vegetation at the crossing did not pose an obstacle to visibility, he will impeach them with evidence of the vegetation removal. But that sort of impeachment would undermine the purpose of Rule 407. The rule exists to promote safety by removing the disincentive to take post-accident safety measures. The impeachment exception to the rule must be read narrowly, so that it doesn't "swallow the rule." *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 468 (7th Cir. 1984) ("Although any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach a defendant's testimony that he was using due care at the time of the accident, if this counted as 'impeachment' the exception would swallow the rule."); *see also Probus v. K-Mart, Inc.*, 794 F.2d 1207, 1210 (7th Cir. 1986) (using subsequent remedial measures to impeach a defendant's testimony that he "was exercising due care or that materials used in the manufacture of a product were appropriate for their intended application" would be contrary to the purpose of Rule 407).

Fourth, Rodewald argues that the evidence of post-collision vegetation removal is admissible to rebut Wisconsin Central's defense that Rodewald was contributorily negligent

7

for failing to see or hear the locomotive, because the removal suggests that the vegetation was likely significant enough to block his vision. But introducing the post-collision vegetation removal for this purpose would be essentially the same as introducing it to prove Wisconsin Central's negligence. The evidence would undermine the purpose of Rule 407, would cause confusion to the jury about how the evidence should be considered, and would create unfair prejudice to Wisconsin Central. Accordingly, this motion will be granted.

**Motion to preclude evidence of horn volume or that horn was not sounded, Dkt. 116**

This court granted summary judgment to Wisconsin Central on Rodewald's claim that the locomotive failed to properly sound its horn and whistle. Because this claim is out of the case, Wisconsin Central says that Rodewald should be precluded from introducing evidence about the horn volume. Rodewald argues that evidence of the horn volume is relevant to explain why he did not hear the horn before the collision.

This motion will be granted in part and denied in part. Rodewald may not argue or suggest that Wisconsin Central failed to sound its horn properly or that the horn volume was insufficient to provide adequate warning to Rodewald. But Rodewald may provide a limited amount of testimony regarding why he might not have heard the horn, in light of the noise of his truck and other characteristics of the crossing. Such evidence is relevant to provide context for Rodewald's claim and to explain why he did not stop at the crossing, all of which is relevant to any assertion of negligence on Rodewald's part. But the court agrees with Wisconsin Central that Rodewald cannot suggest that he failed to hear the horn because it was not loud enough. Wisconsin Central may propose a limiting instruction to be read to the jury regarding proper use of the horn evidence.

**Motion to preclude John Lee's expert opinions and testimony, Dkt. 117**

Rodewald's expert John Lee, a mechanical and industrial engineer, offers opinions about why Rodewald did not hear and see the approaching locomotive. Dkt. 117-1. Wisconsin Central argues that Lee's opinions are irrelevant now that the horn claim is out of the case, and because his opinions are unreliable.

Like the motion above, the court will grant this motion in part and deny it in part. Lee explains the basis for his opinions and the court is not persuaded that they fail to meet the standard for reliable expert testimony. Rodewald can introduce Lee's opinions for the limited purpose of explaining why Rodewald might not have heard the horn. Rodewald may not elicit testimony or make arguments suggesting that the volume of the horn was insufficient or was responsible for the collision.

**Motion to preclude reference to Rodewald as a "victim," Dkt. 118**

This motion will be denied.  This court does not generally police the terms that counsel or witnesses use to describe others, and Wisconsin Central has not persuaded the court that it would be unfairly prejudiced by use of the word victim. The court is confident that the jury will be able to fairly judge the case and will follow the court's instructions regarding the elements of Rodewald's claims and his burden of proof.

**Motion to preclude Rodewald from referring to the crossing as unguarded or unprotected, Dkt. 119**

This motion will be granted as unopposed.

**Motion to preclude evidence that depicts work on railroads not belonging to Wisconsin Central, Dkt. 120**

This motion will be granted as unopposed.

**Motion to exclude witnesses from the courtroom, Dkt. 121**

Wisconsin Central frames this motion as a request to sequester witnesses under Federal Rule of Evidence 615, and Rodewald doesn't oppose that request. But Wisconsin Central also asks the court to prohibit *all* witnesses from "having any discussion regarding any trial testimony or reviewing any deposition transcripts or video that will be substantively used at trial prior to the time that the witness is called to testify." Dkt. 121, at 2. Rule 615 doesn't include such a prohibition, and Wisconsin Central has not justified its request for its proposed bar. So the court will order witness sequestration but the court will not prohibit witnesses from reviewing deposition transcripts or video or prohibit witnesses from discussing trial testimony with counsel. However, discussions between counsel and non-party witnesses are proper subjects for cross-examination.

**Motion to preclude introduction of crossing inventory and track charts, Dkt. 122**

This motion will be granted as unopposed. Rodewald notes that he intends to introduce track maps, but the maps appear to fall outside the scope of Wisconsin Central's motion. If there are disputes about track maps, the parties should raise those at the final pretrial conference.

**Motion to preclude evidence that other operating practices or warning devices are safer than those used by Wisconsin Central, Dkt. 123**

This motion will be granted in part and denied in part. Rodewald will be precluded from presenting evidence or argument that the Cranberry Lake Road crossing would have been safer if Wisconsin Central had imposed a slower speed limit, had used a louder horn, had operated short-hood forward, or had installed active safety devices. Those issues were resolved at

summary judgment. But Rodewald can argue that the crossing would have been safer with less vegetation and if the locomotive had illuminated its ditch lights.

**Motion to preclude Rodewald from using the word "trap," Dkt. 124**

This motion will be denied. As discussed above, this court does not generally micromanage the terms that parties and witnesses use to describe individuals or situations. Wisconsin Central has not shown that the word "trap" would be unfairly prejudicial or confusing to the jury. Trap is an ordinary word, and jurors can decide whether it applies to the Cranberry Lake Road crossing.

**Motion to preclude testifying or arguing for Wisconsin Central's negligence on the basis of theories already decided at summary judgment, Dkt. 125**

This motion is granted as unopposed.

**Motion to preclude Dr. William Schneider's opinions on urological, renal, hypertension, and emotional health, Dkt. 126**

Dr. William Schneider is a board-certified orthopedic surgeon who specializes in knee and shoulder injuries. Rodewald retained Dr. Schneider to provide expert medical testimony regarding Rodewald's injuries, prognoses, future medical care, and the cost of future medical care attributable to the collision. Dkt. 126-3; 126-4. Wisconsin Central argues that Dr. Schneider's report includes opinions relating Rodewald's diagnoses and care that fall outside of Schneider's expertise, including opinions about Rodewald's renal and urological conditions, respiratory health, hypertension, and mental health.

"[S]imply because a doctor has a medical degree does not make [the doctor] qualified to opine on all medical subjects." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). On the other hand, physicians may be qualified to testify about medical problems for which they do not specialize, if the physician's "qualifications provide a foundation for [the physician] to

answer a specific question." *Id. See also* Walker v. Soo Line R. Co., 208 F.3d 581, 589 (7th Cir. 2000). In this instance, Dr. Schneider provided a declaration explaining why he is qualified to provide the opinions he did. Dkt. 153. Wisconsin Central has not had the opportunity to respond to the declaration, so the court will withhold a ruling on this motion and give Wisconsin Central the opportunity to respond at the final pretrial conference.

**Motion to preclude all opinions and testimony of Rodewald's expert Brandon Ogden, Dkt. 128**

This motion will be granted in part and denied in part. As Rodewald concedes, the court's summary judgment decision moots the relevance of many of Brandon Ogden's expert opinions, including his opinions that Wisconsin Central was negligent for operating CN 2194 long-hood forward, that the train crew was negligent for failing maintain a proper lookout, and that Wisconsin Central should have placed active warning devices at Cranberry Lake Road crossing. But Rodewald argues that Ogden should be permitted to offer opinions on two issues: whether CN 2194 had its ditch lights on and whether Wisconsin Central negligently failed to clear vegetation in its right-of-way.

On the first issue, Ogden may testify regarding his interpretation and analysis of the data on the locomotive's event recorder. Ogden asserts that he has experience and expertise in reviewing such data, and Wisconsin Central has made no persuasive argument to the contrary. But Ogden may not evaluate the credibility of other witnesses or offer legal conclusions about whether Wisconsin Central violated federal regulations, as he does in his reports.

On the second issue, Ogden merely parrots the opinions and analysis of other experts who actually performed site-line analyses, including Zachary Bingen and Kenneth Drevnik. Rodewald has not showed that Ogden performed any independent analysis of vegetation, or

that he was qualified to evaluate the analysis performed by others. So Ogden's opinions regarding whether vegetation obscured Rodewald's view of the crossing will be precluded.

**Motion to preclude images produced by Rodewald's experts Zachary Bingen, Kenneth Drevnick, and Fearless Eye, Dkt. 132**

Wisconsin Central moves to preclude Rodewald's witnesses and experts from referring to three groups of images at trial. (1) photographs taken by Rodewald's accident reconstruction experts, Zachary Bingen and Kenneth Drevnick, taken from distances greater than 15 feet south of the crossing; (2) aerial demonstrative images created by Bingen using Google Earth images from two years prior to the collision; and (3) reenactment images produced by Rodewald's visualization expert Amber Warlick and Brad Mathison of Fearless Eye, Inc.

This motion will be granted in part and denied in part. The court agrees with Wisconsin Central that Rodewald may not suggest that any images taken significantly before or after the collision accurately depict the state of vegetation at the crossing at the time of the collision.

But Wisconsin Central's remaining arguments are unpersuasive. As for the first group of photographs, the court is not persuaded that images showing visibility of the crossing more than 15 feet south of the crossing are irrelevant. The crossing was protected by a yield sign, and a driver's ability to see the track as it approached the crossing is relevant to whether and for how long the driver might stop.

For the second group, Bingen explains in detail in his report how he used Google Earth, as well as inspection photographs and survey data, to create the image to which Wisconsin Central now objects. Dkt. 18-2. Wisconsin Central does not challenge Bingen's qualifications as an engineer, Bingen's assertion that engineers use tools such as Google Earth maps and

13

surveys to create images, or even the accuracy of Bingen's images. Bingen's images are admissible.

The court is also not persuaded by Wisconsin Central's arguments that the reenactment images produced by Fearless Eye should be precluded. Fearless Eye's report lists the material reviewed and the data and methods it used to create the challenged images. Dkt. 19-5. Wisconsin Central argues that the images are unreliable because Fearless Eye employees referred to Google Earth photographs and a scene inspection that occurred long after the collision to produce the images. But Wisconsin Central fails to develop these objections. It does not explain why Fearless Eye's consideration of Google Earth photos and scene inspections render the images unreliable. Nor does it even identify anything specific about the images that is inaccurate or misleading. So this evidence will not be precluded.

## B.  Rodewald's motions in limine

**Motion to exclude any reference to Steve Brown's emailed "Download Report"**

This motion will be granted. As explained in the summary judgment order, Steve Brown's email is hearsay. Dkt. 100, at 3. Wisconsin Central argues that the email qualifies as a business record, and that it can be authenticated by Matt Turner, the recipient of the email and a Wisconsin Central employee. But the court is not persuaded that email should be admitted. The email includes Brown's interpretation of data based on his own perception and memory about whether the locomotive's ditch lights were on when it arrived at the station. Brown told Turner that he saw the ditch lights illuminated, so the event recorder must not have been connected to the lights. But it is undisputed that at least one of the ditch lights was broken, and that the ditch lights had been off shortly after the collision. So Brown's recollection of what he saw appears to contradict at least some of the undisputed evidence. Because Brown

14

has not been available for a deposition and will not be present at trial, it would be unfairly prejudicial to Rodewald to admit his out-of-court statements. That being said, the actual data downloaded from the locomotive's event recorder is admissible as a business record.

**Motion to exclude any testimony from Steve Brown**

This motion will be granted. Brown was unable to sit for deposition, and Wisconsin Central has not suggested that it intends to call Brown as a witness at trial.

**Motion to deem established that Wisconsin Central has no photographs showing the auxiliary lights illuminated on the CN 2194**

This motion will be denied. Rodewald can make this point at trial.

**Motion to exclude Foster Peterson's opinions concerning ditch lights**

Rodewald seeks to preclude the opinions given by Wisconsin Central's expert Foster Peterson on pages 14 and 15 of his report, Dkt. 162-1, regarding whether the CN 2194 locomotive's ditch lights were illuminated at the time of the collision. This motion will be granted. Peterson's opinions are based entirely on statements from the locomotive crew and Steve Brown, and involve no expert analysis. He also states that the locomotive data recorder was not required by law to record ditch light activity, but again, merely summarizing the law does not require expertise in engineering. Wisconsin Central opposes the motion, but it focuses almost entirely on flaws in Rodewald's expert reports and on whether ditch lights were legally required to be connected to the data recorder. Neither argument is responsive to Rodewald's arguments about Peterson's report.

**Motion to exclude any argument to the jury that the event recorder was not required by regulation to record ditch light activity**

This motion will be granted. As the court stated at summary judgment, whether the event recorder was required to record ditch light activity does not establish whether it actually

recorded that information. Dkt. 100, at 10. And Wisconsin Central has not pointed to evidence suggesting that it decided not to record ditch light activity on the CN 2194 specifically because it was not required to do so under the law.

The court would consider a request by Wisconsin Central to instruct the jury that Wisconsin Central was not legally obligated to record ditch light activity.

**Motion to prohibit any argument or suggestion from Wisconsin Central that the event recorder was malfunctioning, defective, disconnected, or in some other way not working properly at the time of the subject accident**

This motion will be granted as unopposed. Although Wisconsin Central makes several statements about what it intends to argue regarding the locomotive event recorder, its arguments fall outside the scope of the motion.

**Motion to limit or exclude Steve Arndt's opinion that Rodewald likely was alerted, or should have been alerted, by the locomotive's horn and bells**

Rodewald argues that Steve Arndt, one of Wisconsin Central's engineering experts, should be precluded from giving testimony because his opinions are unreliable and lacking in foundation. Rodewald criticizes Arndt for failing to account for the potential range of variation in the sound pressure level of the particular truck that Rodewald was driving. He also says that Arndt's opinions are based on unproved assumptions. But Rodewald's arguments address the weight that should be given to Arndt's opinions, not their admissibility. Arndt provided a detailed explanation of the methodology and data that he used in reaching his opinions, and his reasons for choosing particular methods and data. Rodewald has provided no persuasive reason to exclude his opinions.

**Motion to exclude Foster Peterson from offering an opinion on the visibility of the locomotive to Rodewald**

Rodewald asks the court to exclude a paragraph from Foster Peterson's expert report regarding visibility, Dkt. 42, at 21, on the ground that the paragraph is based solely on the opinions of other experts. This motion will be denied. The paragraph is included as part of Peterson's description of "Crossing Conditions and Signage." It was not improper for Peterson to rely on data provided by other sources to describe conditions at the crossing at the time of the collision. Rodewald develops no argument as to why Peterson's reliance was improper or why it rendered his opinions invalid.

**Motion to exclude any expert testimony from any other Wisconsin Central employees not disclosed as expert witnesses**

This motion will be granted, but Rodewald does not identify any specific witness or testimony that he thinks should be excluded. If Rodewald thinks that a specific witness or that specific testimony should be excluded, he should raise the issue at the final pretrial conference.

**Motion to exclude any expert testimony from Wisconsin Central employee Matthew Turner**

This motion will be denied as vague and overly broad. Turner is permitted by the federal rules of evidence to provide testimony and opinions that fall within the scope of his personal knowledge and duties as a risk mitigation officer for Wisconsin Central, and Rodewald does not identify any specific testimony or subjects about which Turner should be precluded from testifying.

**Motion to exclude any testimony from Wisconsin Central employee Justin Trush**

This motion will be granted. Wisconsin Central concedes that Trush's testimony is irrelevant to the issues remaining in the case.

**Motion to exclude any testimony from Wisconsin Central employee Jackie Macewicz**

This motion will be granted. Wisconsin Central concedes that Macewicz's testimony is irrelevant to the issues remaining in the case.

**Motion to take judicial notice that the United States District Court for the Eastern District of Wisconsin held in *Anderson v. Wisconsin Cent. Transp. Co.*, 327 F. Supp. 2d 969 (E.D. Wis. 2004), that Wisconsin Central's failure to cut brush in its right-of-way at a railroad crossing constituted negligence as a matter of law**

This motion will be denied. Decisions from other district courts may be persuasive authority, but they are not binding on this court. And whether Wisconsin Central's failure to remove vegetation caused the collision at issue in this case depends on the specific facts and circumstances of this case.

**Motion to preclude any evidence or testimony that Rodewald received a traffic citation or paid a fine**

The motion is granted as unopposed.

**Motion to prohibit any reference to law enforcement accident reports**

This motion will be granted in part and denied in part. This court generally prohibits the admission of police reports because they are hearsay, and it is not persuaded that an exception should be made in this case. But Wisconsin Central may use the police reports to refresh the recollection of the authors of the reports, although the reports used for this purpose are not to be shown to the jury.

**Motion to exclude any reference to Waste Management's determination that the subject accident was "preventable" by Rodewald**

After the collision, Rodewald's employer Waste Management completed an incident report that marked the accident as "preventable." Dkt. 129-7. The author of the report was Lindsey Sprague. Rodewald argues that reference to the report should be precluded. Wisconsin

Central responds that its experts relied on the Waste Management report in forming their opinions and should be permitted to testify and refer to the report, but the argument is not persuasive. Sprague was not a witness to the collision, she is not an expert witness, and there is no information in her report explaining the basis for her conclusion that the collision was preventable. Admission of the report would be confusing to the jury and unfairly prejudicial to Rodewald. So the motion will be granted.

**Motion to exclude any reference to Rodewald's prior driving incident on March 27, 2017**

This motion will be granted. The prior driving incident involved a collision with another car that was attempting to pass Rodewald while he was making a left turn. It is not probative of the issues remaining in this case, would lead to confusion of the issues, and would be unfairly prejudicial to Rodewald.

**Motion to exclude any reference to a 2021 motor vehicle accident and OWI incident involving Rodewald**

This motion will be granted as unopposed.

**Motion to exclude any reference to any conviction or juvenile adjudication**

This motion will be granted as unopposed.

**Motion to exclude collateral source evidence**

Rodewald asks the court to exclude evidence that he received workers compensation benefits after the collision. The parties agree that the jury may not consider the workers compensation benefits to determine the amount of Rodewald's damages. Wisconsin Central says that motion should be denied because there might be proper reasons to admit collateral source evidence. I will grant the motion, however, because Wisconsin Central fails to identify any proper reason to admit this evidence in this case.

**Motion to exclude any reference to social security disability benefits based on the collateral source rule and Rule 403**

The parties dispute whether Rodewald's social security benefits qualify as a "collateral source" payment. Rodewald says that benefits are collateral source payments, so the court should preclude Wisconsin Central from presenting arguments or evidence about them. Wisconsin Central responds that social security benefits do not qualify as a collateral source. But Wisconsin Central does not explain why the jury would need to consider evidence about Rodewald's social security benefits regardless whether they qualify as collateral source payments. So the court will preclude evidence of social security benefits during the liability phase of trial, and it will reserve a ruling on whether Wisconsin Central can present evidence of Rodewald's social security benefits during the damages phase of trial.

**Motion to receive Rodewald's summary of past health care expenses, subject to medical expert testimony on reasonableness and necessity**

Rodewald prepared a document summarizing his health care expenses attributable to the collision, along with more than 300 pages of supporting billing statements. Dkt. 129-11. Wisconsin Central refused to agree to the authenticity of the documents or accuracy of Rodewald's summary of expenses, so Rodewald requests the court to rule in advance that the documents will be admitted into evidence.

The court will reserve a ruling on this motion. The court encourages and expects parties to agree to the authenticity of these sorts of business records and documents to when there is

no concern about their trustworthiness. It is a waste of everyone's time to require parties to present witnesses solely for the purpose of authenticating documents to which the opposing party has no real doubt about their trustworthiness. At the final pretrial conference, Wisconsin Central should be prepared to identify specific concerns it has about the authenticity of the documents or the accuracy of the summary referred to in Rodewald's motion.

**Motion to exclude any vocational opinions from Timothy Riley that do not account for Rodewald's need to recline supine every hour**

One of Rodewald's medical experts, Brian Harrison, M.D., opined that Rodewald is restricted to sedentary work that permits him to recline supine up to 15 to 20 minutes each hour. Dkt. 129-13. Rodewald argues that the court should preclude the opinions of Wisconsin Central's vocational expert, Timothy Riley, because he failed to account for Rodewald's need to recline supine every hour.

But Riley relied on the opinion of Thomas Lyons, M.D., Wisconsin Central's medical expert, when providing his vocational assessment, and Lyons did not give the opinion that Rodewald would have to recline supine every hour. Riley's assessment was supported by Lyons's opinion, so this motion will be denied.

**Motion to preclude the testimony, expert report, models and exhibits of Brian Weaver and Steven R. Arndt, Dkt. 130**

Wisconsin Central retained Explico Engineering to conduct a human factors and accident reconstruction evaluation. Brian Weaver and Steven Arndt issued a joint report providing their analysis and conclusions. Dkt. 43. Rodewald argues that the report should be excluded for a number of reasons, but none is persuasive.

Rodewald says it is not clear who gathered all of the data for the report, who authored which opinions, and whether the various opinions fall within the particular's expert's area of expertise. But the report is not confusing or lacking in foundation. The report identifies clearly the opinions of each expert and the basis for their opinions. It also was not improper for Weaver and Arndt to rely on data gathered from their employees to conduct their analyses

Rodewald also points to what he says are errors in the Arndt's model of the site. But Wisconsin Central's response explains why the alleged errors are insignificant, and why Arndt's model falls within the broad area of accident reconstruction expertise. Rodewald's arguments go to the weight of the evidence, but they are not sufficient reason to strike the entire report.

ORDER

IT IS ORDERED that:

1.  Wisconsin Central's motions in limine are resolved as follows:

    a.  Motion to preclude evidence of Wisconsin Central's size and financial condition, Dkt. 106, is GRANTED IN PART and DENIED IN PART, as set forth above.

    b.  Motion to preclude parties and witnesses from referring to Canadian National or Canadian National Railway, Dkt. 107, is DENIED.

    c.  Motion to preclude testimony or evidence that are legal conclusions, Dkt. 108, is DENIED.

    d.  Motion to preclude references to the railroad industry as inherently dangerous, Dkt. 109, is GRANTED, as set forth above.

    e.  Motion to preclude evidence regarding Rodewald's loss of fringe benefits, Dkt. 110, is RESERVED, as set forth above.

    f.  Motion to preclude the use of newspaper articles, social media, and other news stories, Dkt. 111, is GRANTED.

    g.  Motion to preclude the use of evidence regarding discipline of the train crew, Dkt. 112, is GRANTED.

    h.  Motion to preclude use of evidence of other crossing accidents involving Wisconsin Central or the train crew of CN 2194, Dkt. 113, is GRANTED.

    i.  Motion to preclude use of post-collision photographs for purpose of asserting that auxiliary lights were out pre-collision, Dkt. 114, is DENIED.

    j.  Motion to bar evidence that Wisconsin Central removed vegetation from its right-of-way after the collision, Dkt. 115, is GRANTED.

    k.  Motion to preclude evidence of horn volume or that horn was not sounded, Dkt. 116, is GRANTED IN PART and DENIED IN PART as set forth above.

    l.  Motion to preclude John Lee's expert opinions and testimony, Dkt. 117, is GRANTED IN PART and DENIED IN PART as set forth above.

    m.  Motion to preclude reference to Rodewald as a victim, Dkt. 118, is DENIED.

23

n. Motion to preclude Rodewald from referring to the crossing as unguarded or unprotected, Dkt. 119, is GRANTED.

o. Motion to preclude evidence that depicts work on railroads not belonging to Wisconsin Central, Dkt. 120, is GRANTED.

p. Motion to exclude witnesses from the courtroom, Dkt. 121, is GRANTED IN PART and DENIED IN PART as set forth above.

q. Motion to preclude introduction of crossing inventory and track charts, Dkt. 122, is GRANTED.

r. Motion to preclude evidence that other operating practices or warning devices are safer than those used by Wisconsin Central, Dkt. 123, is GRANTED IN PART and DENIED IN PART as set forth above.

s. Motion to preclude Rodewald from using the word "trap," Dkt. 124, is DENIED.

t. Motion to preclude testifying or arguing for Wisconsin Central's negligence on the basis of theories already decided at summary judgment, Dkt. 125, is GRANTED.

u. Motion to preclude Dr. William Schneider's opinions on urological, renal, hypertension, and emotional health, Dkt. 126, is RESERVED, as set forth above.

v. Motion to preclude all opinions and testimony of Rodewald's expert Brandon Ogden, Dkt. 128, is GRANTED IN PART and DENIED IN PART, as set forth above.

w. Motion to preclude images produced by Rodewald's experts Zachary Bingen, Kenneth Drevnick, and Fearless Eye, Dkt. 132, is DENIED.

2. Plaintiff Gerald Rodewald's first motion in limine, Dkt. 127, is GRANTED IN PART and DENIED IN PART as follows:

a. Motion to exclude any reference to Steve Brown's emailed "Download Report" is GRANTED.

b. Motion to exclude any testimony from Steve Brown is GRANTED.

c. Motion to deem established that Wisconsin Central has no photographs showing the auxiliary lights illuminated on the CN 2194 is DENIED.

d. Motion to exclude Foster Peterson's opinions concerning ditch lights is DENIED.

e. Motion to exclude any argument to the jury that the event recorder was not required by regulation to record ditch light activity is GRANTED.

f. Motion to prohibit any argument or suggestion from Wisconsin Central that the event recorder was malfunctioning, defective, disconnected, or in some other way not working properly at the time of the subject accident is GRANTED.

g. Motion to limit or exclude Steve Arndt's opinion that Rodewald likely was alerted, or should have been alerted, by the locomotive's horn and bells is DENIED.

h. Motion to exclude Foster Peterson from offering an opinion on the visibility of the locomotive to Rodewald is GRANTED.

i. Motion to exclude any expert testimony from any other Wisconsin Central employees not disclosed as expert witnesses is GRANTED.

j. Motion to exclude any expert testimony from Wisconsin Central employee Matthew Turner is DENIED.

k. Motion to exclude any testimony from Wisconsin Central employee Justin Trush is GRANTED.

l. Motion to exclude any testimony from Wisconsin Central employee Jackie Macewicz is GRANTED.

m. Motion to take judicial notice that the United States District Court for the Eastern District of Wisconsin held in *Anderson v. Wisconsin Cent. Transp. Co.*, 327 F. Supp. 2d 969 (E.D. Wis. 2004), that Wisconsin Central's failure to cut brush in its right-of-way at a railroad crossing constituted negligence as a matter of law is DENIED.

n.  Motion to preclude any evidence or testimony that Rodewald received a traffic citation or paid a fine is GRANTED.

o.  Motion to prohibit any reference to law enforcement accident reports is GRANTED IN PART and DENIED IN PART.

p.  Motion to exclude any reference to Waste Management's determination that the subject accident was "preventable" by Rodewald is GRANTED.

q.  Motion to exclude any reference to Rodewald's prior driving incident on March 27, 2017 is GRANTED.

r.  Motion to exclude any reference to a 2021 motor vehicle accident and OWI incident involving Rodewald is GRANTED.

s.  Motion to exclude any reference to any conviction or juvenile adjudication is GRANTED.

t.  Motion to exclude collateral source evidence is GRANTED.

u.  Motion to exclude any reference to social security disability benefits based on the collateral source rule and Rule 403 is GRANTED.

v.  Motion to receive Rodewald's summary of past health care expenses, subject to medical expert testimony on reasonableness and necessity is GRANTED IN PART and RESERVED IN PART, as set forth above.

w.  Motion to exclude any vocational opinions from Timothy Riley that do not account for Rodewald's need to recline supine every hour is DENIED.

1.  Plaintiff's second motion in limine to exclude the expert report of Explico Engineering, Dkt. 130, is DENIED.

Entered March 16, 2022.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

26